UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO BROWN, | No. 2:14-cv-952-EFB |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, plaintiff's motion is denied and the Commissioner's granted.

I.   BACKGROUND

Plaintiff filed an application for SSI on July 20, 2011, alleging that he had been disabled since July 19, 2002. Administrative Record ("AR") 262-270. His application was denied initially and upon reconsideration. *Id.* at 172-176, 184-189. On November 15, 2012, a hearing was held before administrative law judge ("ALJ") Carol Eckersen. *Id.* at 53-100. Plaintiff was represented by counsel at the hearing, at which he and a vocational expert ("VE") testified. *Id.*

/////

1

On January 14, 2013, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act.[1] *Id.* at 19-30. The ALJ made the following specific findings:

1. The claimant has not engaged in substantial gainful activity since July 20, 2011, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: a psychotic disorder NOS, an antisocial personality disorder, an affective disorder (depression), and polysubstance abuse in recent remission. (20 CFR 416.920(c)).

* * *

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

\* \* \*

4. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple, repetitive tasks in a nonpublic setting, with occasional interaction with coworkers and supervisors.

\* \* \*

5. The claimant is unable to perform his past relevant work, which is beyond the residual functional capacity established herein. (20 CFR 416.965).

\* \* \*

6. The claimant was born on February 16, 1973 and was 38 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can performed (20 CFR 416.969 and 416.969(a)).

\* \* \*

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 20, 2011, the date the application was filed (20 CFR 416.920(g)).

*Id.* at 19-30.

Plaintiff 's request for Appeals Council review of the ALJ's decision, *id.* at 14-15, was denied on March 12, 2014, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-6.

II.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

*Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III.   ANALYSIS

Plaintiff argues that (1) the ALJ improperly rejected the opinions of treating physicians at the Sacramento County Jail, the Parole Outpatient Clinic, and the County of Sacramento's Aftercare Clinic, and (2) the ALJ failed to include all of plaintiff's impairments in determining his residual functional capacity and thus, failed to ask a proper hypothetical question to the VE.

A.   The ALJ Properly Weighed the Medical Opinion Evidence of Record

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1295 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or

examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id*. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Plaintiff argues that the ALJ improperly rejected the opinions of treating physicians at the Sacramento County Jail, the Parole Outpatient Clinic, and the County of Sacramento's Aftercare Clinic.

### 1. Sacramento County Jail

The Sacramento County Jail's psychiatric report assigned plaintiff a GAF score of 50. ECF No. 16-1 at 8. Plaintiff notes that according to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Addition ("DSM-IV"), a GAF score of 50 indicates serious symptoms or serious impairment in social, occupational, or school functioning, such as being unable to keep a job. *Id.* Plaintiff argues that the ALJ erred by failing to provide a reason for rejecting this "opinion" of the Jail's Psychiatry Department. *Id.* at 9. Plaintiff misunderstands the meaning and significance of a GAF score.

The GAF score is not a medical opinion as to disability. "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas. v. Lambert*, 159 F.3d 1161, 1164 n. 2 (9th Cir. 1998). "The scale does not evaluate impairments caused by psychological or environmental factors." *Morgan*, 169 F.3d at 598 n. 1. Because the scores are intended for use in planning treatment, they are not dispositive in social security cases, *Vance v. Astrue*, 2008 WL 2955140 (C.D. Cal. July 30, 2008), and "an ALJ is not required to give controlling weight to a treating physician's GAF score," *Chavez v. Astrue*, 699 F. Supp. 2d 1125, 1135 (C.D. Cal. 2009). Thus, "[a]n ALJ has no

obligation to credit or even consider GAF scores in the disability determination." *Aldrich v. Colvin*, 2014 WL 6653999 (E.D. Wash. Nov. 24, 2014) (citing 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000) (GAF scale does not have a direct correlation to the severity requirements in SSA mental disorders listings)).

Thus, a GAF score is not a "medical opinion" that the ALJ needed to discuss. *See* 20 C.F.R. § 416.927(a)(2); *see, e.g., Pinegar v. Comm'r of Soc. Sec. Admin.*, 499 F. App'x. 666 at *2-3 (9th Cir. 2012) (finding no error when an ALJ did not consider a claimant's GAF score). Plaintiff's argument that the ALJ erred by failing to consider his GAF score as determined by the Jail's Psychiatry Department lacks merit.

### 2. Parole Outpatient Clinic (POC)

The POC diagnosed plaintiff with, among several other conditions, severe Borderline Personality Disorder. ECF No. 16-1 at 9. Plaintiff notes that according to the DSM-IV, one of the diagnostic criteria for Borderline Personality Disorder is "impulsivity in substance abuse . . . ." *Id.* at 10. Plaintiff argues that the ALJ erred by failing to provide a reason for rejecting the POC's "opinion" that plaintiff could not give up substance abuse. *Id.*

The POC's client case notes for plaintiff, however, contain no opinion regarding plaintiff's impulsivity in substance abuse. *See* AR 359-379. The notes merely provide a diagnosis of Borderline Personality Disorder. *Id.* at 367. According to the DSM-IV, "impulsivity in substance abuse" is one of nine different criteria for this diagnosis. In diagnosing plaintiff with Borderline Personality Disorder, the POC did not determine that plaintiff could not give up substance abuse. This is merely plaintiff's lay interpretation of the evidence. Notably, that same evidence contains plaintiff's own reports of being "clean and sober." *Id.* at 366, 371, 374.

As the POC offered no opinion regarding plaintiff's impulsivity in substance abuse, there was no such opinion for the ALJ to reject. *See* 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or

/////

mental restriction."); 20 C.F.R. § 416.927(a)(2) (same). Accordingly, plaintiff's claim of error in this regard lacks merit.

### 3. County of Sacramento Aftercare Clinic

Plaintiff points to an October 2013 letter from marriage and family therapist Marie Cerillo, which stated that plaintiff would not be ready for employment in the next six months due to his mental health symptoms. ECF No. 16-1 at 10-11; AR 599. Plaintiff argues that the ALJ erred in determining that Cerillo was not a treating source. ECF No. 16-1 at 10.

As a marriage and family therapist, however, Cerillo was not an acceptable medical source. *See* 20 C.F.R. § 416.913(a). Instead, the ALJ properly considered her letter as "other" medical evidence. AR 26; 20 C.F.R. § 404.1513(d). The ALJ assigned it little weight, noting that there were no objective findings as severe as those it suggested, and otherwise lacked objective, supporting evidence. This was neither contrary to law nor an abuse of discretion. AR 26, 599; *see Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003) (treating physician may be discredited if it is unsupported by the record as a whole or by objective medical findings). The letter was also based on plaintiff's subjective complaints, which the ALJ found not fully credible. AR 24, 26; *see Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ properly rejected opinion of examining physician for lack of objective support, noting that the physician only relied on the claimant's subjective complaints); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (ALJ may disregard medical opinions that are based on discredited subjective complaints). Moreover, as the ALJ pointed out, the letter did not provide useful information about plaintiff's ability to function. AR 26. It merely offered the conclusion of a disability, stating plaintiff was unable to work. These disability determinations, however, are reserved to the Commissioner. AR 599; *see* 20 C.F.R. § 416.927(d); SSR 96-5p, 1996 SSR LEXIS 2 at *15 (July 2, 1996) (A disability determination is an administrative finding reserved to the Commissioner, and a statement by a medical source that an individual is "unable to work" does not mean they are disabled under the Act).

Plaintiff argues Cerillo should have been considered an acceptable medical source because she noted in her letter that plaintiff was under the care of the Clinic's "psychiatric staff." ECF

No. 16-1 at 10; AR 599. Plaintiff argues this is comparable to *Shontos v. Barnhart*, 328 F.3d 418, 426-27 (8th Cir. 2003), where the court recognized a nurse practitioner and a counselor as an acceptable medical source when engaged in a "team" approach to care. ECF No. 16-1 at 10. Notably, the "team" of mental health care providers in *Shontos* included a psychologist. 328 F.3d at 421, 426. Here, there is no indication that Cerillo was working under a physician's supervision or as his or her agent, as she merely stated that plaintiff was under the care of the Clinic's "psychiatric staff." AR 599.

Plaintiff claims the ALJ should have further developed the record to determine whether Cerillo was a part of psychiatric team, or otherwise acting as an agent of a physician. ECF No. 16-1 at 11. But when the record allows the ALJ to evaluate the evidence and make a disability determination, the ALJ is under no obligation to further develop the record. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). There is no indication that the record in this case was ambiguous or inadequate. Thus, the ALJ's duty to further develop the record was not triggered.

Moreover, even assuming Cerillo was an acceptable medical source, the ALJ provided several legally sufficient reasons for according her "opinion" little weight, including the lack of objective evidence, her reliance on plaintiff's discredited subjective statements, and her unqualified conclusion regarding plaintiff's disability.

For these reasons, plaintiff's arguments regarding the ALJ's consideration of Cerillo's letter lack merit.

### B. The ALJ Posed a Proper Hypothetical Question to the Vocational Expert

The ALJ noted that consultative examiner Tim Canty opined that plaintiff would be able to participate in low stress, nonpublic activities if he gave up substance abuse, and that *if motivated*, would be able to perform fairly routine nonpublic work. AR 27. Plaintiff argues that Dr. Canty's statement that plaintiff could work "if motivated," assumes that he stops suffering from Antisocial Personality Disorder. *See* ECF No. 16-1 at 13 (citing to the DSM-IV's diagnostic criteria for Antisocial Personality Disorder). Plaintiff notes that the ALJ presumably relied upon Dr. Canty's opinion to form her hypothetical question to the VE, which asked about the possibility of work for a claimant capable of simple, repetitive tasks in a non-public setting, with

8

1  occasional interaction with co-workers and supervisors. *Id.* at 8; AR 98. Plaintiff argues that the
2  ALJ's hypothetical was flawed because she attributed a characteristic – motivation – that is
3  contrary to his diagnosed mental illness. ECF No. 16-1 at 14.

4      Plaintiff is again offering his lay interpretation of the evidence in arguing that Dr. Canty's
5  statement about plaintiff's ability to work assumes that he no longer suffers from Antisocial
6  Personality Disorder. In diagnosing plaintiff with Antisocial Personality Disorder, Dr. Canty did
7  not determine that plaintiff could not be motivated, *see* AR 310-313, and the ALJ did not err in
8  failing to include this "impairment" in determining plaintiff's residual functional capacity
9  ("RFC"). The final responsibility for deciding a person's RFC is reserved to the Commissioner.
10 *See* 20 C.F.R. § 416.927(d). The ALJ properly assessed the medical evidence of record in
11 determining plaintiff's RFC, which is supported by substantial evidence. *See Bayliss v. Barnhart*,
12 427 F.3d 1211, 1217 (9th Cir. 2005) (in determining RFC, ALJ permissibly took into account
13 those limitations for which there was record support that did not depend on the claimant's
14 subjective complaints).

15     Moreover, a hypothetical question posed to a VE is proper where substantial evidence
16 supports the limitations included. *See Magallanes*, 881 F.2d at 756-57. During the hearing, the
17 ALJ asked the VE to consider a hypothetical person with the same RFC as the ALJ ultimately
18 attributed to plaintiff. AR 23, 98-99. The VE testified that this individual could work in a
19 number of occupations, including those of a kitchen helper, janitor, and hand packager. *Id.* at 98-
20 99. Here, substantial evidence supported the limitations the ALJ included in her hypothetical
21 question, which were also reflected in her RFC finding. *Id.* at 23, 98-99; *see Osenbrock v. Apfel*,
22 240 F.3d 1157, 1165 (9th Cir. 2001) (holding that the ALJ was only required to include
23 limitations that he found credible and supported). The ALJ was not required to include any other
24 limitations as plaintiff suggests, because the ALJ need only include those limitations she found to
25 exist. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (holding that the ALJ need
26 only include limitations that he found to exist, and because his findings were supported by
27 substantial evidence, did not err in omitting claimant's other claimed limitations). Accordingly,
28 the ALJ properly relied on the VE's testimony in finding that jobs existed in significant numbers

in the national economy that plaintiff could perform.  AR 29; *see Bayliss*, 427 F.3d at 1217-18 (The ALJ's reliance on the VE's response to her hypothetical which included all of the limitations that the ALJ found "credible and supported by substantial evidence in the record" was proper; A VE's "recognized expertise provides the necessary foundation for his or her testimony . . . no additional foundation is required.").

### IV. CONCLUSION

The ALJ applied the proper legal standards and supported her decision with substantial evidence.  Therefore, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: September 21, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE